Filed 1/9/15; pub. order 1/30/15

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| FAIRVIEW VALLEY FIRE, INC., | D065971 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. CIVVS901308) |
| CALIFORNIA DEPARTMENT OF FORESTRY, | |
| Defendant and Respondent. | |


APPEAL from a judgment of the Superior Court of San Bernardino County, Steve Malone and John P. Vander Feer, Judges. Affirmed.


Pope & Gentile and Daniel K. Gentile for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Mark Beckington and Michael Glenn Witmer, Deputy Attorneys General, for Defendant and Respondent.

In this government contracting dispute between defendant and respondent California Department of Forestry and Fire Protection (Cal Fire) and plaintiff and appellant Fairview Valley Fire, Inc. (Fairview), we affirm a judgment entered in favor of

Cal Fire on an order sustaining Cal Fire's demurrer.

We agree with Cal Fire that, in approving in advance the vendors from whom Cal Fire will actually later hire emergency fire equipment, the agency is not required to employ the formal competitive bid process set forth in the Public Contract Code.[1] Under the express terms of Cal Fire's written policies and procedures, no binding contract arises between Cal Fire and an equipment vendor until a vendor's equipment is actually dispatched by Cal Fire in an emergency. Accordingly, the emergency exemption to the competitive bid procedures set forth in section 10340, subdivision (b)(1) applies to Cal Fire's emergency hiring, and the trial court did not err in sustaining Cal Fire's demurrer to Fairview's declaratory relief claim challenging the agency's emergency equipment hiring process.

We also find the trial court properly dismissed Fairview's causes of action challenging its suspension as a Cal Fire vendor. Cal Fire suspended Fairview as a vendor when it learned that, among other matters, Fairview presented Cal Fire with false billing information and attempted to avoid payment for fuel used during a fire incident. Cal Fire did not breach any agreement with Fairview, when, after Fairview was suspended as an approved vendor, Cal Fire declined to hire Fairview's equipment at the scene of a fire incident. Moreover, Fairview has no claim related to the underlying suspension because, while the case was pending in the trial court, Cal Fire lifted the suspension.

---

[1] All further statutory references are to the Public Contract Code, unless otherwise indicated.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Cal Fire Equipment Hiring Policies and Procedures*

Cal Fire responds to a wide variety of emergencies throughout the state, including more than 5,600 wildfires each year. Although Cal Fire itself owns and operates more than 3,000 fire and emergency response vehicles, it also depends on the availability of equipment and services it hires from private vendors. Cal Fire has adopted a set of Hired Equipment Policies and Procedures (the HEPP), which govern hiring of equipment and services from private vendors.

Under the HEPP, vendors apply to Cal Fire to enter into an Emergency Equipment Rental Agreement (EERA). The application process requires that vendors satisfy Cal Fire with respect to a variety of matters related to the availability, preparedness and safety of their equipment, and includes inspections to verify insurance, personnel, and the location of equipment.

When a vendor's application is approved, the vendor and Cal Fire execute an EERA embodied in a Cal Fire-294 form (Cal Fire-294). Under the terms of a Cal Fire-294, the parties agree that: "[U]pon request of CAL FIRE the contractor will furnish the equipment listed on the CAL FIRE-294 if the contractor is willing and able at the time of request. The agreement also establishes the conditions of employment, the rate and method of payment, and equipment condition requirements."

Importantly, the HEPP states that: "The EERA is a *pre-incident agreement that becomes a binding contract after dispatch*." (Italics added.) The obligations set forth in the Cal Fire-294 are expressly subject to this provision of the HEPP.

The HEPP expressly provides that: "A Cal Fire-294 is required for all hired

3

equipment except local government, National Guard and OES-ordered equipment.  Other than those exceptions, no equipment shall be considered hired by Cal Fire or ordered to work until a Cal Fire-294 has been completed."  (Emphasis omitted.)  The HEPP further provides that any Cal Fire employee who hires a piece of private equipment is responsible for verifying the existence of a Cal Fire-294 and obtaining a copy of it; "[o]n incidents where no agreement exists, the employee will prepare the CAL FIRE-294."

Under the HEPP, Cal Fire attempts to use local government equipment before hiring private equipment, and, when required to use private vendors, Cal Fire attempts to do so on a rotating basis.  In this regard, the HEPP states:  "By continually utilizing the same contractors it gives the erroneous perception that we are operating under a 'good ol' boy' system.  Dispatchers will attempt to share the fire assignments with as many different contractors as possible.  Rotating hiring opportunities among all qualified vendors improves CAL FIRE's ability to maintain a large enough contractor pool to respond to a large incident or series of incidents.

"Hiring equipment at an incident should only be done when the normal equipment ordering process cannot meet the immediate need.  Investigations have shown that some contractors attempt to bypass the dispatch system by arriving at an incident with one legitimate Resource Order Number then marketing additional equipment at the site.  This deprives legitimate contractors of hiring opportunities, and encourages 'smoke chasing.'"

4

B. *Fairview's Disputed HEPP Violations*

Fairview is a vendor of emergency vehicles and services, which it has provided Cal Fire and other governmental agencies for a number of years. In particular, as of December 1, 2005,[2] Fairview had a valid Cal Fire-294 agreement with Cal Fire.

On August 29, 2007, Cal Fire sent Fairview a letter that suspended Fairview's right to provide emergency vehicles and services. The suspension was based on Cal Fire's investigation of a 2006 incident in which a Fairview employee impersonated a high-ranking fire department officer at a morning briefing being conducted at a fire incident and thereafter contacted Cal Fire personnel and, in violation of HEPP, was able to have Fairview vehicles and personnel hired outside the normal Cal Fire rotation. Cal Fire's investigation also disclosed that Fairview personnel falsified shift tickets so that Fairview was paid for two operators of a vehicle in instances when it was only entitled to payment for one, resulting in a $6,433 overpayment to Fairview. The investigation also found that, during the incident, Fairview employees obtained several hundred gallons of diesel fuel and then attempted, unsuccessfully, to avoid paying for the fuel.

On October 3, 2007, Fairview appealed its suspension to the Cal Fire regional chief; the appeal was rejected by the regional chief on October 19, 2007.

On October 22, 2007, a Cal Fire dispatcher contacted Fairview and asked Fairview to send two water tenders to a major fire incident, the Witch Creek fire. Although the dispatcher provided Fairview with a "resource order," when Fairview's equipment arrived

---

2    Prior to December 1, 2005, Fairview's ability to provide services to Cal Fire had been suspended because of what Cal Fire had determined was an unlawful use of a disabled veteran business enterprises contracting preference.

5

at the incident, the Cal Fire incident manager refused to hire Fairview in light of its suspension .

C. *Trial Court Proceedings*

Fairview filed a civil complaint against Cal Fire on March 3, 2009. In response to Cal Fire's demurrer to the original complaint, Fairview filed a first amended complaint (FAC) that alleged three causes of action: one cause of action for breach of contract arising out of the dispatcher's request for two water tenders during the Witch Creek fire; a cause of action for declaratory relief challenging Cal Fire's decision not to use its services; and a cause of action for declaratory relief challenging the lack of competitive bidding under the HEPP.

Cal Fire filed a demurrer to the FAC, and the trial court sustained the demurrer with leave to amend as to the first two causes of action: Fairview's breach of contract claim and its challenge to its suspension. The trial court sustained the demurrer without leave to amend with respect to the third cause of action: Fairview's allegation that the HEPP did not comply with California's competitive bidding statutes.

Fairview filed a second amended complaint (SAC) that realleged the breach of contract cause of action and the declaratory relief challenge to its suspension. The trial court sustained the demurrer without leave to amend with respect to the breach of contract claim but overruled the demurrer with respect to Cal Fire's declaratory relief challenge to the suspension.

In April 2011, after the trial court's ruling on Cal Fire's demurrer to the SAC, Cal Fire lifted Fairview's suspension and readmitted it to its hired equipment rotation. Shortly thereafter, Cal Fire moved for summary judgment with respect to the remaining

6

declaratory relief action. Cal Fire argued that because Fairview failed to challenge its suspension at the time it was imposed by way of a petition for a writ of mandate, Fairview could not challenge the suspension by way of a later complaint for declaratory relief; in the alternative, Cal Fire argued that because it lifted Fairview's suspension, Fairview's declaratory relief claim was moot. The trial court found that the declaratory relief claim was moot and granted Cal Fire's motion. Thereafter, the trial court entered judgment in Cal Fire's favor and Fairview filed a timely notice of appeal.

DISCUSSION

I

The principles governing our review of an order sustaining a demurrer without leave to amend and an order granting summary judgment are familiar. On appeal from the dismissal of an action after a demurrer has been sustained, we exercise our independent judgment to determine whether the complaint states a cause of action under any theory. (*City of Morgan Hill v. Bay Area Air Quality Management Dist.* (2004) 118 Cal.App.4th 861, 869.) We accept as true all properly pleaded material facts, all facts that may be inferred from the allegations and all matters judicially noticed, but we do not accept the truth of contentions, deductions or conclusions of law. (*Aubry v. Tri–City Hospital Dist.* (1992) 2 Cal.4th 962, 967.)

When a demurrer has been sustained without leave to amend, we review the decision to deny amendment for abuse of discretion. (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1386.) The court abuses its discretion when it denies leave to amend if there is a reasonable possibility an amendment would cure the defects. It is, however, the plaintiff's burden to show how the complaint could

7

be amended.  (*Ibid*.)

"We review an order granting summary judgment de novo.  [Citation.]  We independently review the record and apply the same rules and standards as the trial court. [Citation.]  The trial court must grant the motion if 'all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'  [Citation.]"  (*Powell v. Kleinman* (2007) 151 Cal.App.4th 112, 121.)

With this background in mind, we take up the trial court's rulings in the order in which it made them.

II

The parties do not dispute that in hiring emergency equipment vendors Cal Fire is governed by article 4, part 2 of the Public Contract Code (§§ 10335-10382), which by its terms applies to "all contracts, including amendments, entered into by any state agency for services to be rendered to the state, whether or not the services involve the furnishing of use of equipment, materials, or supplies or are performed by an independent contractor" (§ 10335, subd. (a)).  Section 10340, subdivision (a) states in pertinent part that "state agencies shall secure at least three competitive bids or proposals for each contract."  However, the requirement of competitive bids does not apply "[i]n cases of emergency where a contract is necessary for the immediate preservation of the public health, welfare, or safety, or protection of state property."  (*Id*., subd. (b)(1).)

Cal Fire argues the EERA's embodied in Cal Fire-294's are not binding contracts at the time they are approved by Cal Fire and only become contracts when, in an emergency, Cal Fire actually dispatches a vendor's equipment.  Accordingly, Cal Fire

8

contends that its hiring of emergency equipment is not subject to the competitive bidding requirements of section 10340, subdivision (a). We agree with Cal Fire for a variety of related reasons.

First and foremost, we agree with Cal Fire that although styled an agreement, by its terms, a Cal Fire-294 is *not* the award of a contract binding on Cal Fire. At most, it is an irrevocable offer or option by an equipment vendor, which may be accepted by Cal Fire in the event of (1) an emergency to which (2) the vendor is able to respond and (3) during which the vendor is next in line in Cal Fire's dispatch rotation or an exception to that rotation. The theory of an irrevocable offer or option that is binding on the offeror, but does not become a contract binding on the offeree until accepted, is well established. (See 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 168, p. 204; Rest.2d Contracts, § 87, subd. (1)(a).)

Our conclusion that the Cal Fire-294 is at most an irrevocable offer by the equipment vendor is supported in the main by its express language. As we have noted, the form expressly incorporates by reference the provision of the HEPP, which states that an EERA embodied in a Cal Fire-294 is a "pre-incident agreement" that only becomes a binding contract at the time of dispatch. This is clearly the language of an irrevocable offer or option, not a binding contract. (See Rest.2d Contracts, § 87, subd. (1)(a).)

Our conclusion that a Cal Fire-294 is only an offer by a vendor and not a binding agreement is buttressed by the vendor selection process set forth in the HEPP. As we have noted, that process permits use of approved private vendors only after equipment from local public agencies has been exhausted and then on a rotating basis designed to support as many qualified vendors as possible. These policies, and the procedures HEPP

9

employs to advance them, make it clear that at the time a Cal Fire-294 is executed there is no expectation by vendors or Cal Fire that any particular vendor will be hired during a fire emergency. This expectation in turn is consistent with our determination that no contract with a vendor is made until, as set forth in the HEPP, equipment is actually dispatched in an emergency.

We are also inclined to accept Cal Fire's characterization of its form for practical reasons. If we treated the Cal Fire-294 as an award of a contract at the time it is executed, under the code we would impose on Cal Fire the counterproductive requirement that it engage in a competitive bidding process at that point. Competition required at the outset, before any emergency, would inherently limit the number of equipment vendors available later when fire emergencies arise. However, the HEPP makes it clear that Cal Fire believes the public's interest is best served if, in an emergency, there are more, rather than fewer, qualified vendors available to meet the agency's needs.

Contrary to Fairview's argument, the process Cal Fire employs in obtaining emergency equipment is readily distinguishable from the facts and holding in *Marshall v. Pasadena Unified School Dist.* (2004) 119 Cal.App.4th 1241. In *Marshall*, a school district used competitive bidding to select a contractor for a school modernization program but later terminated the contract "for the convenience of the District." (*Id.* at p. 1246.) Two months later, the school district awarded a no bid contract to a competitor by way of an emergency resolution. In holding that the later no bid contract was invalid, the court found that the district's termination of the original contract was not an emergency within the meaning of the code: "That event was not a 'sudden, unexpected

10

occurrence' posing a clear and imminent danger requiring prompt action to protect life, health, property, or essential public services. [Citation.]" (*Id*. at p. 1258.) Plainly, the holding in *Marshall* is of no assistance to us in determining whether execution of a Cal Fire-294 is a binding contract within the meaning of section 10335, subdivision (a).

Because execution of a Cal Fire-294 is not the award of a binding contract, it does not trigger application of section 10335 and the competitive bidding requirements of the code. A binding contract plainly does come into existence at the time a vendor's equipment is dispatched, but, just as plainly, at that point the emergency exception set forth in section 10340, subdivision (b)(1) relieves Cal Fire of the duty to engage in the competitive bid procedure.

In light of our construction of the Cal Fire-294, the trial court did not err in sustaining Cal Fire's demurrer to Fairview's cause of action alleging a violation of the code.

III

Next, we take up Fairview's claim that it should have been paid for its response to the October 22, 2007 Witch Creek fire.

The primary obstacle to Fairview's claim for payment for its response is the well-established principle that private parties may not recover against a public entity on a quantum meruit or quasi-contract theory. (See *Katsura v. San Buenaventura* (2007) 155 Cal.App.4th 104, 109-110 [no recovery for extra work performed outside of scope of written contract].) "Persons dealing with a public agency are presumed to know the law with respect to any agency's authority to contract. [Citation.] '"One who deals with the public officer stands presumptively charged with a full knowledge of that officer's

11

powers, and is bound at his . . . peril to ascertain the extent of his . . . powers to bind the government for which he . . . is an officer, and any act of an officer to be valid must find express authority in the law or be necessarily incidental to a power expressly granted."' [Citation.]" (*Id.* at p. 109.) Thus, """No government, whether state or local, is bound to any extent by an officer's acts in excess of his . . . authority."' [Citations.] [¶] . . . [¶] It is settled that 'a private party cannot sue a public entity on an implied-in-law or quasi-contract theory, because such a theory is based on quantum meruit or restitution considerations which are outweighed by the need to protect and limit a public entity's contractual obligations.' [Citations.]" (*Id.* at pp. 109-110.)

As Cal Fire points out, at the time of Fairview's response to the Witch Creek fire it had been suspended as an approved vendor and, hence, did not have a valid Cal Fire-294; thus, under the HEPP, no contract between Cal Fire and Fairview ever arose with respect to Fairview's response. Because Fairview had no contract with respect to the Witch Creek fire and there is no viable quasi-contractual theory of recovery available to it, the trial court properly sustained without leave to amend Cal Fire's demurrer to Fairview's breach of contract cause of action.

### IV

We also find no error in the trial court's order granting summary judgment with respect to Fairview's challenge to its suspension.

"California courts will decide only justiciable controversies. [Citations.] The concept of justiciability is a tenet of common law jurisprudence and embodies '[t]he principle that courts will not entertain an action which is not founded on an actual controversy . . . .' [Citations.] Justiciability thus 'involves the intertwined criteria of

12

ripeness and standing. A controversy is "ripe" when it has reached, but has not passed, the point that the facts have sufficiently congealed to permit an intelligent and useful decision to be made.' [Citation.] But 'ripeness is not a static state' [citation], and a case that presents a true controversy at its inception becomes moot "'if before decision it has, through act of the parties or other cause, occurring after the commencement of the action, lost that essential character'" [citation]." (*Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1573 (*Wilson*).)

"The pivotal question in determining if a case is moot is therefore whether the court can grant the plaintiff any effectual relief. [Citations.] If events have made such relief impracticable, the controversy has become 'overripe' and is therefore moot." (*Wilson*, *supra*, 191 Cal.App.4th at p. 1574.)

Here, the record is undisputed that Cal Fire lifted its suspension of Fairview while this case was pending in the trial court. Thus, Fairview obtained any *prospective* relief from the suspension that the trial court could have otherwise provided. Nonetheless, Fairview argues that its claim is not moot because it believes it suffered damages as a result of the alleged unlawful and improper suspension of its ability to provide firefighting equipment. We disagree. Even if Cal Fire acted improperly in suspending Fairview, its conduct would not give rise to a claim for damages.

In the absence of a statute otherwise providing for such damages, the denial, suspension or revocation of a permit, license, certificate, approval or authorization, will not give rise to a claim for damages. (See Gov. Code, § 818.4; see also *Carlsbad Aquafarm, Inc. v. State Dept. of Health Services* (2000) 83 Cal.App.4th 809, 817, 821-823.) As a matter of statutory immunity, Government Code section 818.4 protects Cal

13

Fire from any liability for its error in suspending Fairview, and our holding in *Carlsbad Aquafarm* deprives it of any due process damage claim against the state. In *Carlsbad Aquafarm*, the department of health services declined to approve the plaintiff as a certified shell fish provider, who in turn sued the department for damages. Although the plaintiff was successful in the trial court and recovered substantial damages from the department on theory that the department failed to provide it procedural due process, on appeal we reversed and held that damages for violation of due process were not available against the department. (*Carlsbad Aquafarm*, at p. 823.)

In short, the record here shows that Fairview received all in the way of either prospective or retrospective relief the trial court could have provided it with respect to its suspension by Cal Fire. Thus, Fairview's suspension claims were moot and properly dismissed. (*Wilson*, *supra*, 191 Cal.App.4th at p. 1574.)

DISPOSITION

The judgment is affirmed. Cal Fire to recover its costs.

BENKE, Acting P. J.

WE CONCUR:

NARES, J.

McINTYRE, J.

14

Filed 1/30/15

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| FAIRVIEW VALLEY FIRE, INC., | D065971 |
| Plaintiff and Appellant, | (Super. Ct. No. CIVVS901308) |
| v. | |
| CALIFORNIA DEPARTMENT OF FORESTRY, | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendant and Respondent. | |

THE COURT:

The opinion filed January 9, 2015 is ordered certified for publication.

BENKE, Acting P. J.

Copies to:  All parties

15