Filed 1/5/16  Steinborn v. Dos Palos Oro Loma Joint School Dist. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JOHN STEINBORN,<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>DOS PALOS ORO LOMA JOINT SCHOOL DISTRICT et al.,<br><br>  Defendants and Respondents. | F069711<br><br>(Merced Super. Ct. No. CVM016173)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Merced County.  Donald J. Proietti, Judge.

Georgeson and Belardinelli and Richard A. Belardinelli for Plaintiff and Appellant.

Edrington, Schirmer & Murphy, Timothy P. Murphy, and Owen T. Rooney for Defendants and Respondents.

-ooOoo-

Plaintiff John Steinborn sued respondents Dos Palos Oro Loma Joint Unified School District and Bryant Middle School (collectively, "defendants")[1] for injuries he allegedly sustained crossing a street adjacent to the school. Defendants filed a demurrer to the two causes of action against them, which the court sustained without leave to amend.

We conclude the court properly sustained the demurrer, but should have granted leave to amend the cause of action alleging a dangerous condition of public property. We therefore reverse the judgment and remand with directions for the trial court to enter a new order that sustains the demurrer, but grants leave to amend the fourth cause of action.[2]

## FACTS[3]

On December 6, 2012, Steinborn officiated a basketball game at the gymnasium of Bryant Middle School, which is part of the Dos Palos Oro Loma Joint Unified School District. The school is adjacent to Bryant Avenue, a north/south roadway on the east side of the school. After the game, at approximately 5:45 p.m., Steinborn walked across Bryant Avenue heading towards his vehicle. Steinborn's vehicle was parked on a property across from Bryant Avenue, which defendants used as a parking lot. Upon reaching his vehicle, Steinborn learned he had forgotten something in the school gymnasium. Steinborn began to cross Bryant Avenue heading back towards the school when he was struck by a motorist. Steinborn was outside the crosswalk when struck. The motorist's view had been obstructed by a Chowchilla School District bus, which had been

---

[1] Steinborn also sued several other defendants who are not parties to this appeal. Our use of the word "defendants" in this opinion refers only to Bryant Middle School and Dos Palos Oro Loma Joint Unified School District.

[2] The new order shall deny leave to amend the third cause of action.

[3] The facts are taken from Steinborn's first amended complaint.

parked on Bryant Avenue while loading students. Bryant Middle School had a designated bus loading lane, but it was locked at the time of the accident.

Steinborn sued several individuals and entities. His first amended complaint alleged two causes of action against the defendants in this appeal: failure to discharge a mandatory duty (the third cause of action - Gov. Code, § 815.6) and dangerous condition of public property (the fourth cause of action - Gov. Code, § 835.) Defendants filed a demurrer as to both causes of action, which the court granted without leave to amend. The court subsequently entered judgment in favor of defendants and Steinborn now challenges the court's rulings on the demurrer.

## DISCUSSION

"On appeal from the dismissal of an action after a demurrer has been sustained, we exercise our independent judgment to determine whether the complaint states a cause of action under any theory. [Citation.] We accept as true all properly pleaded material facts, all facts that may be inferred from the allegations, and all matters judicially noticed, but we do not accept the truth of contentions, deductions or conclusions of law. [Citation.])" (*Fairview Valley Fire, Inc. v. California Department of Forestry & Fire Protection* (2015) 233 Cal.App.4th 1262, 1268 (*Fairview*).)

When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

## I. Third Cause of Action

### A. Allegations

Steinborn's third cause of action alleged that defendants, as public entities, failed to discharge certain mandatory duties and thereby proximately caused his injury. (See Gov. Code, § 815.6.) The cause of action identified the following alleged breaches of mandatory duties:

1. Defendants "failed to comply with their mandatory duties … to properly mark, identify, maintain, preserve, and repair the pedestrian crosswalks contiguous to a school building or the grounds thereof in violation of their mandatory duty under California Vehicle Code Section 21368 …."

2. Defendants "failed to maintain, repair and maintain the proper functioning of warning lights and signals."

3. Defendants "failed to comply with their mandatory duty to properly paint and/or mark in yellow on each side of the street in the lane or lanes leading to all yellow marked crosswalks the following words, 'SLOW-SCHOOL XING,' in violation of California Vehicle Code Section 21368…."

## B. Analysis

### 1. Background Law and the Parties' Contentions

"[I]n California, 'all government tort liability must be based on statute [citation].' [Citation.]" (*Hoff v. Vacaville Unified School Dist.* (1998) 19 Cal.4th 925, 932; see also Gov. Code, § 815, subd. (a).)

One such statute providing for government tort liability is Government Code section 815.6, which reads:

> "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

Steinborn contends that defendants are liable under Government Code section 815.6 because they failed to discharge mandatory duties set forth in Vehicle Code section 21368.

Vehicle Code section 21368 reads:

> "Whenever a marked pedestrian crosswalk has been established in a roadway contiguous to a school building or the grounds thereof, it shall be painted or marked in yellow as shall be all the marked pedestrian

4.

crosswalks at an intersection in case any one of the crosswalks is required to be marked in yellow. Other established marked pedestrian crosswalks may be painted or marked in yellow if either (a) the nearest point of the crosswalk is not more than 600 feet from a school building or the grounds thereof, or (b) the nearest point of the crosswalk is not more than 2,800 feet from a school building or the grounds thereof, there are no intervening crosswalks other than those contiguous to the school grounds, and it appears that the facts and circumstances require special painting or marking of the crosswalks for the protection and safety of persons attending the school. There shall be painted or marked in yellow on each side of the street in the lane or lanes leading to all yellow marked crosswalks the following words, 'SLOW--SCHOOL XING,' except that such words shall not be painted or marked in any lane leading to a crosswalk at an intersection controlled by stop signs, traffic signals, or yield right-of-way signs. A crosswalk shall not be painted or marked yellow at any location other than as required or permitted in this section."

Defendants essentially contend that while Vehicle Code section 21368 may create several duties concerning crosswalks, it imposes those duties on a different public entity. And "[t]here is no mandatory duty imposed on a public entity if the specified enactment is inapplicable to that entity. [Citations.]" (*Guzman v. County of Monterey* (2009) 46 Cal.4th 887, 902.) We agree with defendants.

### a. Standard of Review

" 'Whether an enactment creates a mandatory duty is a question of law ….' [Citation.]" (*Tuthill v. City of San Buenaventura* (2014) 223 Cal.App.4th 1081, 1089.) Similarly, determining whether Vehicle Code section 21368 applies to a particular set of facts is a question of law. (*Cerna v. City of Oakland* (2008) 161 Cal.App.4th 1340, 1350; *Lewis v. City of Los Angeles* (1982) 137 Cal.App.3d 518, 521.)

### b. Application

It is clear that Vehicle Code section 21368 sets forth several requirements pertaining to certain crosswalks near schools: they must be painted or marked in yellow; they must be surrounded by the words "SLOW—SCHOOL XING" on each side, etc. (Veh. Code, § 21368.) The important question in this case is whether those duties are to be borne by the school and/or school district, or some other entity.

Where a statute in placed within a statutory code is a strong indicator of the legislature's intent. (See *Roman Catholic Bishop of Oakland v. Superior Court* (2005) 128 Cal.App.4th 1155, 1169–1170.) Vehicle Code section 21368 is found in Article 1, Chapter 2, Division 11 of the Vehicle Code, which pertains to "Erection and Maintenance" of traffic signs, signals and markings. At the beginning of Article 1, the Vehicle Code defines government authority pertaining to the erection and maintenance of traffic signs, signals and markings. (Veh. Code, §§ 21350–21351.) It provides that the state Department of Transportation "shall place and maintain, or cause to be placed and maintained, with respect to the highways under its jurisdiction, appropriate signs, signals, and other traffic control devices *as required hereunder* …." (Veh. Code, § 21350, italics added.) It also provides that "[l]ocal authorities in their respective jurisdictions shall place and maintain or cause to be placed and maintained such traffic signs, signals and other traffic control devices upon streets and highways *as required hereunder* …." (Veh. Code, § 21351, italics added.) The subsequent sections of the Article then proceed to outline various mandatory or optional signs and markings, including the crosswalk specifications of Vehicle Code section 21368. (Veh. Code, §§ 21351.3–21368.)

The plain import of this statutory structure is that the creation and maintenance of the various "traffic signs, signals and other traffic control devices" described in Article 1, Chapter 2, Division 11 of the Vehicle Code – including Vehicle Code section 21368 – are the responsibility of: (1) the Department of Transportation as to highways under its jurisdiction (Veh. Code, § 21350), and (2) the "[l]ocal authorities." (Veh. Code, § 21351.) A school and a school district fall under neither of these categories.[4] (*Searcy v. Hemet*

---

[4] Steinborn apparently agrees that Vehicle Code section 21368 should be read alongside Vehicle Code section 21351. But he argues that Vehicle Code section 21351 imposes the duty to place and maintain traffic signals, etc., on "local authorities" without identifying the specific public entities embraced by that term. It is true that Vehicle Code section 21351 itself does not define "local authorities." But Vehicle Code section 385 does. " 'Local authorities' means the legislative body of every county or municipality

*Unified School Dist.*, *supra*, 177 Cal.App.3d at p. 801; see also *Wright v. Arcade School Dist.* (1964) 230 Cal.App.2d 272, 278.) And "[t]here is no mandatory duty imposed on a public entity if the specified enactment is inapplicable to that entity. [Citations.]" (*Guzman v. County of Monterey*, *supra*, 46 Cal.4th at p. 902.) Because Vehicle Code section 21368 does not impose a "mandatory duty" (Gov. Code, § 815.6) on a school or school district, the statute cannot support a Government Code section 815.6 claim against a school or school district. The court properly sustained defendants' demurrer to this cause of action.[5]

## II. Fourth Cause of Action

The fourth cause of action alleged that defendants "knowingly and negligently" created several dangerous conditions of public property. (See Gov. Code, § 835.) The cause of action identified the following allegedly dangerous conditions:

1. "[L]ocking the bus parking entrance and unloading zone and prohibiting access to such area preventing its use which caused the bus to park on Bryant Avenue in a location that requires the Chowchilla bus to illegally park …."[6]

---

having authority to adopt local police regulations." (Veh. Code, § 385; see also Veh. Code, § 100.) A school and a school district do not fall within this definition of "local authorities." (See *Searcy v. Hemet Unif. Sch. Dist.* (1986) 177 Cal.App.3d 792, 801.)

[5] We also conclude the court properly denied leave to amend. It is the plaintiff's burden to show how a complaint could be amended to remedy its deficiencies. (*Fairview*, *supra*, 233 Cal.App.4th at p. 1268.) Steinborn argued that he could amend the mandatory duty cause of action to add allegations that defendants have assumed a responsibility to safeguard the transit of students to and from school under Education Code section 44808. That statute only concerns the liability (or lack thereof) to "any pupil of the public schools." (Ed. Code, § 44808.)

Steinborn also argued he could "amplify[]" existing allegations. However, he failed to identify any specific, *new* allegations that would remedy the insufficiencies of the third cause of action.

[6] On appeal, Steinborn does not defend the fourth cause of action based on the "locked bus parking area" allegations. Instead, he relies on the allegations concerning the defective condition of Bryant Avenue.

2. "[F]ailed to control, supervise, manage, design and/or otherwise prevent the dangerous condition created by the unsafe parking on adjacent property …."

3. "[F]ailing to properly light or repair pedestrian signal lighting and warnings in the area …."

4. "Failing to properly maintain, repair and adequately and visibly mark pedestrian cross-walks and street warnings of a pedestrian cross-walk … used by [p]edestrians in traversing/crossing Bryant Avenue and necessary to warn motorists of pedestrian traffic."

5. "[F]ailing to mark in yellow on each side of the street in the lane or lanes leading to all cross-walks the words 'SLOW—SCHOOL XING ….' "

6. "[F]ailing to prohibit buses from parking along Bryant Avenue …."

7. "[F]ailing to utilize, repair, maintain, operate[,] insure the proper functioning of the pedestrian overhead warning lights on Bryant Avenue …."[7]

The court sustained the demurrer to Steinborn's fourth cause of action, ruling that he had "not alleged a dangerous condition of public property as defined by Government Code § 830." Defendants contend that since they did not own, maintain or control Bryant Avenue, there is no viable cause of action for a dangerous condition of public property. However, the fact defendants do not own, maintain or control Bryant Avenue is not dispositive in light of *Bonanno v. Central Contra Costa Transit Authority* (2003) 30 Cal.4th 139 (*Bonanno*).

---

[7] The first amended complaint asserts these in a numbered list format. Our numbering of these allegations does not match the complaint because we have excluded one entry, which does not allege an independent condition of property. It reads: "(7) having actual or constructive knowledge of the dangerous condition of pedestrians' use of Bryant Avenue along both the east and west sides that created a dangerous condition of public property and a substantial and foreseeable risk of injury to pedestrians foreseeable to Defendants Merced, Dos Palos and Bryant."

*Bonanno* involved a bus stop maintained by the Central Contra Costa Transit Authority (CCCTA). (*Bonanno*, *supra*, 30 Cal.4th at p. 144.) The bus stop was located in an unincorporated area of the county on Pacheco Boulevard near its intersection with DeNormandie Way. In the early 1980's, the county had painted a crosswalk at the intersection of Pacheco Boulevard and DeNormandie Way to make it easier to reach the bus stop. (*Ibid.*) In 1993, plaintiff Darlene Bonanno was struck by a car as she crossed the intersection of Pacheco Boulevard and DeNormandie Way through the crosswalk. (*Id.* at p. 145.)

CCCTA argued – as defendants do in the present case – that it could not be liable "for an injury occurring on property (the street) it neither owned nor controlled…."[8] (*Bonanno*, *supra*, 30 Cal.4th at p. 151.) The *Bonanno* court, however, observed that while a dangerous condition most obviously exists when public property is "physically damaged, deteriorated, or defective," a dangerous condition may also exist in "the *location* of public property, by virtue of which users are subjected to hazards on adjacent property." (*Id.* at pp. 149, 154, italics in original.) Accordingly, it rejected CCCTA's contention and held that "CCCTA owned and controlled its own bus stop, and a condition of *that* property, its physical situation, caused users of the bus stop to be at risk from the immediately adjacent property[]" (i.e., the street). (*Id.* at p. 151, italics in original.)

Under the reasoning of *Bonanno*, we must reject defendants' contention that Steinborn cannot state a viable cause of action merely because they do not own, maintain or control Bryant Avenue. If, as Steinborn alleges, Bryant Avenue is in a dangerous condition because of inadequate lighting, insufficient marking and maintenance of crosswalks, etc., and the location of the parking area exposes its users to the alleged

---

[8] The Supreme Court limited its review of the case by assuming the crosswalk was indeed dangerous, which left "only the question whether a *bus stop* may be deemed dangerous because bus users, to reach the stop, must cross at [a] dangerous crosswalk." (*Bonanno*, *supra*, 30 Cal.4th at p. 147, italics in original.)

9.

hazards posed by Bryant Avenue's dangerous condition, then the parking area is also in a dangerous condition under the reasoning of *Bonanno*.

However, it remains unclear whether Steinborn has a viable claim under Government Code section 835. While the location of the parking area may potentially be deemed a dangerous condition under *Bonanno*, the first amended complaint does not sufficiently alleged that defendants "owned or controlled" (Gov. Code, § 830, subd. (c)) the parking area across Bryant Avenue.**9** Instead, the complaint alleges that defendants "utilized" the property for parking and knew that attendees of school events regularly used the property for parking. These facts do not establish that defendants "owned or controlled" (*ibid.*) the parking property. Therefore, the demurrer was properly sustained.

However, there is a reasonable possibility that the defect can be cured by amendment. Specifically, Steinborn might allege additional facts that show defendants actually did "own[] or control[]" (Gov. Code, § 830, subd. (c)) the parking area property. Or, possibly, Steinborn will be unable to allege such facts. Regardless, leave to amend is required if there is a reasonable *possibility* a defect can be cured by amendment. (*Blank v. Kirwan, supra*, 39 Cal.3d at p. 318.) Because such a possibility exists here, Steinborn must be given an opportunity to state a viable claim under *Bonanno*.

## DISPOSITION

The judgment is reversed and the matter remanded to the superior court. On remand, the superior court shall enter a new order: (1) sustaining defendants' demurrer to the third cause of action without leave to amend, and (2) sustaining defendants'

---

**9** This is important because it is the location of the *parking area* – rather than the location of the school itself – that may potentially support a *Bonanno* claim. The location of the school itself would not constitute a dangerous condition under *Bonanno* because it cannot be easily moved. (See *Bonanno*, *supra*, 30 Cal.4th at p. 152 [distinguishing *Seaber v. Hotel Del Coronado* (1991) 1 Cal.App.4th 481 on the basis that a bus stop can be moved or eliminated while a hotel cannot.].)

demurrer to the fourth cause of action with leave to amend.  Each party shall bear their own costs on appeal.

                                    _____

                                    POOCHIGIAN, J.

WE CONCUR:


_____
LEVY, Acting P.J.


_____
KANE, J.

11.