[No. B224332. Second Dist., Div. Eight. Sept. 15, 2011.]

SAM CHAN et al., Plaintiffs and Appellants, v.
JUDICIAL COUNCIL OF CALIFORNIA, Defendant and Respondent.

**COUNSEL**

Scott Law Firm, John Houston Scott and Lizabeth N. de Vries for Plaintiffs and Appellants.

Paul, Plevin, Sullivan & Connaughton, Sandra L. McDonough and Marie A. Lavanier for Defendant and Respondent.

**OPINION**

**FLIER, J.**—Appellants are previously licensed court interpreters in Mandarin, Russian, or Armenian who failed to comply with new licensing requirements. Prior to 2009, interpreters in those languages became eligible to interpret by passing English language proficiency examinations. Respondent the Judicial Council of California, beginning in 2009, required that appellants and other interpreters in certain languages pass bilingual proficiency exams. At the same time, respondent granted automatic eligibility to interpreters who had helped develop the new exams. Appellants appeal from the trial court's grant of summary judgment to respondent. Appellants assert due process and equal protection claims. We affirm.

## PROCEDURAL HISTORY

Appellants' complaint alleged (1) respondent violated appellants' due process rights by requiring that they pass new rigorous certifying exams by February 1, 2009, in order to remain court interpreters and (2) respondent violated appellants' equal protection rights by allowing certain interpreters to be grandfathered in or temporarily exempted from these new certifying exams without offering appellants the same opportunity. Appellants also sought a judicial determination as to whether the February 1, 2009 certification deadline applies to appellants and a permanent injunction preventing respondent from enforcing the current certification requirement against the affected court interpreters.

In response, respondent filed a motion for summary judgment. The trial court granted the motion, ruling that (1) appellants' due process cause of action cannot be established because there is no protectable property interest in being a certified interpreter; (2) appellants' equal protection cause of action cannot be established because they were neither similarly situated to the interpreters who were on a 1996 list of approved interpreters (there is no such list in the record) nor to the five subject matter experts who were certified without having to take the certification exams; and (3) appellants are not entitled to declaratory or injunctive relief. Appellants filed a timely appeal.

## FACTS

The material facts in this case are undisputed. In 1990, the Chief Justice of California gave respondent control over the administration of California's court interpreter licensing regime.[1] (Gov. Code,[2] § 68560, subd. (d).) Respondent then contracted with the testing entity Cooperative Personnel Services (CPS) to help develop and administer licensing exams.

In 2000, respondent designated Mandarin, Russian, and Armenian (hereinafter affected languages) as languages requiring more rigorous court interpreter examinations.[3] Accordingly, all court interpreters in the affected languages were subsequently required to pass a certification exam.[4] CPS selected a

---

[1] The Judicial Council is a statutory entity established by the California Constitution that sets policies and priorities for the judicial branch of government. (Cal. Const., art. VI, § 6; Cal. Rules of Court, rule 10.1(a)(1) & (2).)

[2] Unless otherwise specified, all further statutory references are to the Government Code.

[3] Section 68562, subdivision (a) provides: "The language designations shall be based on (1) the courts' needs as determined by the language and interpreter use and need studies under Section 68563, (2) the language needs of non-English-speaking persons in the courts, and (3) other information the Judicial Council deems relevant."

[4] See section 68561, subdivision (a).

number of interpreters, described as subject matter experts (SME's), to help develop certification exams. CPS did not select any of the appellants to serve as SME's. After developing the new exams, CPS recommended granting five of the SME's automatic certification because they helped create the exams. Respondent then granted these five SME's certification.

CPS finished creating the certification exams in 2004. Due to a number of grace periods and exemptions, however, five of the nine appellants were given until February 1, 2009, to obtain certification and four were given until February 1, 2010.[5] Appellants failed to obtain certification and subsequently filed this suit.

## STANDARD OF REVIEW

"In reviewing the summary judgment, we independently examine the supporting and opposing papers to determine whether they reveal any material issue of fact and whether the moving party was entitled to judgment as a matter of law." (*Bernson v. Browning-Ferris Industries* (1994) 7 Cal.4th 926, 929 [30 Cal.Rptr.2d 440, 873 P.2d 613]; see also Code Civ. Proc., § 437c, subd. (c).) We strictly construe the moving party's evidence and liberally construe the opponent's evidence. (*Branco v. Kearny Moto Park, Inc.* (1995) 37 Cal.App.4th 184, 189 [43 Cal.Rptr.2d 392].) The material issues must be set out in the complaint. (See *Keniston v. American Nat. Ins. Co.* (1973) 31 Cal.App.3d 803, 812 [107 Cal.Rptr. 583].) The affidavits and declarations disclose whether there are triable issues of facts. (*Orange County Air Pollution Control Dist. v. Superior Court* (1972) 27 Cal.App.3d 109, 113 [103 Cal.Rptr. 410].)

## DISCUSSION

1. *Due Process*

A. *Procedural Due Process*

Appellants allege that respondent violated their procedural due process rights by requiring them to obtain certification by February 1, 2009, without giving them sufficient opportunity to comply with new certification procedures. Appellants further argue that they had protectable property interests in remaining certified court interpreters.

---

[5] Appellants filed their second amended complaint on September 24, 2009. As a result of these exemptions, four of the appellants were eligible to interpret at the time they filed their complaint. Respondent mentioned this fact in a single introductory sentence without citation in its answer to the complaint. There is no other record of a discussion of this issue at the trial level. The parties have not raised the issue in their briefs, so we will not address it further.

■ The federal and California Constitutions place procedural constraints on the deprivation of property interests. (U.S. Const., 14th Amend.; Cal. Const., art. I, §§ 7, 15.) "[P]roperty interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money." (*Board of Regents v. Roth* (1972) 408 U.S. 564, 571–572 [33 L.Ed.2d 548, 92 S.Ct. 2701].) However, a "claimant must . . . identify a statutorily conferred benefit or interest of which he or she has been deprived." (*Ryan v. California Interscholastic Federation-San Diego Section* (2001) 94 Cal.App.4th 1048, 1071 [114 Cal.Rptr.2d 798].) Specifically, a party must demonstrate a promise or guarantee of a specific benefit or right in the entity's policies or state law. (See *Roth, supra,* at pp. 577–578.)   ■   The question on appeal is whether court interpreters certified before 2009 who do not comply with new certification procedures nonetheless possess property interests in remaining certified interpreters. We do not think that they do.

■ Public employees generally do not possess property interests in continuing in employment contrary to or beyond the terms imposed by the relevant statute. (See, e.g., *Miller v. State of California* (1977) 18 Cal.3d 808, 813–814 [135 Cal.Rptr. 386, 557 P.2d 970] [public employee required to retire at age 67, three years after a statute lowered the mandatory retirement age from 70, had no vested contractual right to remain employed until age 70].)   ■   The question of whether a statute creates an expectation of entitlement sufficient to create a property interest "will depend largely upon the extent to which the statute contains mandatory language that restricts the discretion of the [licensing authority] to deny licenses to applicants who claim to meet minimum eligibility requirements." (*Jacobson v. Hannifin* (9th Cir. 1980) 627 F.2d 177, 180.)

"[A]n applicant does not have a property interest in the renewal of a license if the reviewing body has discretion to deny renewal or to impose licensing criteria of its own creation." (*Thornton v. City of St. Helens* (9th Cir. 2005) 425 F.3d 1158, 1165.) In this case, the Court Interpreter Services Act expressly provides respondent with the discretion to adopt certification procedures.[6]

■ While the lack of a specific statute or contract that creates a property interest "does not necessarily foreclose the possibility that a property interest might have been created," "the absence of such formal sources is 'highly relevant' to the due process question." (*Doran v. Houle* (9th Cir. 1983)

---

[6] Section 68562, subdivision (d), provides that "[t]he Judicial Council shall adopt standards and requirements for interpreter proficiency, continuing education, certification renewal, and discipline." (§ 68562, subd. (d).) The statute further states that "[i]nterpreters shall establish to the court that they meet the requirements of this section under procedures adopted by the Judicial Council." (§ 68561, subd. (e).)

721 F.2d 1182, 1185, citing *Perry v. Sindermann* (1972) 408 U.S. 593, 602 [33 L.Ed.2d 570, 92 S.Ct. 2694].) However, even without the appropriate statutory language, a property interest can still be created "based on the conduct and representations of government officials when their actions lead to the creation of a 'mutually explicit understanding'." (*Doran, supra,* at p. 1185, quoting *Perry, supra,* at p. 601.)

Without citing any supporting facts, appellants claim that respondent's actions led to an understanding that appellants held a legitimate claim of entitlement. Appellants' complaint states that they were told they were registered to interpret until 2010. Appellants may also have had court badges that had expiration dates of February 2010 or later. However, the record presents undisputed evidence that respondent did not guarantee appellants indefinite employment as court interpreters. Respondent gave notice to appellants that they would be unable to interpret if they did not comply with the new certification procedures. Appellants received clear notice that certification would be required after their respective languages were designated.

Appellants do not possess property interests in continued employment without successfully completing the appropriate certification procedures. The trial court's grant of summary judgment as to appellants' procedural due process claims was proper.

### B. *Substantive Due Process*

■  Substantive due process "prevents government from enacting legislation that is 'arbitrary' or 'discriminatory' or lacks 'a reasonable relation to a proper legislative purpose.'" (*Kavanau v. Santa Monica Rent Control Bd.* (1997) 16 Cal.4th 761, 771 [66 Cal.Rptr.2d 672, 941 P.2d 851], quoting *Nebbia v. New York* (1934) 291 U.S. 502, 537 [78 L.Ed. 940, 54 S.Ct. 505].) "To establish a substantive due process claim, a plaintiff must, as a threshold matter, show a government deprivation of life, liberty, or property." (*Nunez v. City of Los Angeles* (9th Cir. 1998) 147 F.3d 867, 871.)

As discussed earlier in this opinion, appellants do not have a property interest in remaining certified interpreters. (See *ante,* at pp. 199–201.) Thus, appellants have failed to meet the initial substantive due process threshold.

### 2. *Equal Protection*

Appellants allege that respondent violated appellants' equal protection rights by exempting certain interpreters from the certification requirements without providing the same opportunity to appellants. Appellants argue (1) they were similarly situated to the SME's who were certified without examination

and (2) respondent had no rational basis to treat appellants differently from the SME's. The trial court held that appellants and the SME's were not similarly situated as appellants were not involved in developing the certification exams.

First, appellants argue that the trial court erred in holding that the interpreters chosen as SME's and appellants were not similarly situated in terms of their education and experience. Second, they argue that the trial court erred in holding that the SME's and appellants were not similarly situated at the time the SME's were granted certification without examination. Third, they argue, without factual or legal support, that they should have been included on a list of interpreters eligible to be certified without going through the official certification process.

### A. *"Similarly Situated"*

█ The equal protection guarantees embodied in the United States Constitution and article I, section 7 of the California Constitution require that "persons similarly situated with respect to the legitimate purpose of the law receive like treatment." (*Purdy & Fitzpatrick v. State of California* (1969) 71 Cal.2d 566, 578 [79 Cal.Rptr. 77, 456 P.2d 645]; see also *Reed v. Reed* (1971) 404 U.S. 71, 75–76 [30 L.Ed.2d 225, 92 S.Ct. 251].) "This principle, of course, does not preclude the state from drawing any distinctions between different groups of individuals, but does require that, at a minimum, classifications which are created bear a rational relationship to a legitimate public purpose." (*In re King* (1970) 3 Cal.3d 226, 232 [90 Cal.Rptr. 15, 474 P.2d 983].)

In order to sustain an equal protection claim, it must first be demonstrated "that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner." (*In re Eric J.* (1979) 25 Cal.3d 522, 530 [159 Cal.Rptr. 317, 601 P.2d 549].) Second, the plaintiff must demonstrate that the challenged classification does not pass the appropriate standard of review. (*Ibid.*) "Even if the challenger can show that the classification differently affects similarly situated groups, '[i]n ordinary equal protection cases not involving suspect classifications or the alleged infringement of a fundamental interest,' the classification is upheld unless it bears no rational relationship to a legitimate state purpose." (*People v. Ranscht* (2009) 173 Cal.App.4th 1369, 1372 [93 Cal.Rptr.3d 800], quoting *Weber v. City Council* (1973) 9 Cal.3d 950, 958–959 [109 Cal.Rptr. 553, 513 P.2d 601].)

With respect to their first argument, appellants claim that they, just like the SME's, were experienced court interpreters who had interpreted for many years. It is undisputed that appellants and the SME's were all court interpreters. Respondent argues, without citation to the record, that the SME's were

selected to develop the tests specifically because they had skills and abilities applicable to test development. However, there is no evidence in the record that the SME's had particularized skills relevant to test development. Construing the record in favor of appellants, we must assume that appellants were similarly situated to the SME's when the SME's were chosen. (See *College Area Renters & Landlord Assn. v. City of San Diego* (1996) 43 Cal.App.4th 677, 686 [50 Cal.Rptr.2d 515].) As a result, respondent's decision to select certain interpreters to act as SME's must survive rational basis review, which, as we discuss *post*, it does. (See *Weber v. City Council, supra*, 9 Cal.3d at pp. 958–959.)

Appellants also argue that they and the SME's were similarly situated when the SME's were granted certification without examination. This claim has no merit. The SME's took part in developing the testing examinations. Respondent decided to grant them certification because it would not make sense for them to take the very examinations that they had helped to develop. Appellants, on the other hand, did not help develop the testing examinations, and consequently were not similarly situated to the SME's at that point.

Third, appellants argue that they should have been on a list of interpreters eligible to be certified pursuant to section 68561, subdivision (b).[7] Appellants' argument is unpersuasive. First, there is no evidence that such a list exists. Second, the statute provides that interpreters on such a list shall be deemed certified only until January 1, 1996. (§ 68561, subd. (b).) After that date, any interpreters who obtained certification as a result of being on this list were subject to respondent's normal certification procedures. (§ 68561, subd. (b).)

### B. *Rational Relationship*

Because appellants' second and third equal protection claims have no merit, we need only examine respondent's decision to choose certain interpreters, and not appellants, to act as SME's. "The conventional 'rational relationship' test is traditionally applied in cases involving .occupational licensing . . . ." (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 17 [112 Cal.Rptr. 786, 520 P.2d 10].) Courts have employed strict scrutiny in certain occupational licensing cases, but only when suspect classifications were involved. (See, e.g., *In re Griffiths* (1973) 413 U.S. 717, 721–722 [37 L.Ed.2d 910, 93 S.Ct. 2851] [applying strict scrutiny to a classification

---

[7] Section 68561, subdivision (b) provides as follows: "Interpreters named and maintained on the list of recommended court interpreters . . . shall be deemed certified under this article until January 1, 1996. After that date, those interpreters shall not be deemed certified unless they have complied with the procedures for certification adopted under subdivision (c) of Section 68562."

based on alienage]; *Sail'er Inn, Inc. v. Kirby* (1971) 5 Cal.3d 1, 17 [95 Cal.Rptr. 329, 485 P.2d 529] [applying strict scrutiny to a classification based on sex].) Appellants concede that respondent did not employ suspect classifications and that rational review is appropriate.

■ "In conducting rational-basis equal protection analysis, ' "a legislative choice is not subject to courtroom factfinding and may be based on rational speculation *unsupported by evidence or empirical data.*" ' " (*In re Jenkins* (2010) 50 Cal.4th 1167, 1181 [116 Cal.Rptr.3d 790, 240 P.3d 260], quoting *Warden v. State Bar* (1999) 21 Cal.4th 628, 650 [88 Cal.Rptr.2d 283, 982 P.2d 154]; see *FCC v. Beach Communications, Inc.* (1993) 508 U.S. 307, 315 [124 L.Ed.2d 211, 113 S.Ct. 2096].) Rational review requires merely that "distinctions drawn by a challenged statute bear some rational relationship to a conceivable legitimate state purpose." (*Westbrook v. Mihaly* (1970) 2 Cal.3d 765, 784 [87 Cal.Rptr. 839, 471 P.2d 487], vacated on other grounds (1971) 403 U.S. 915 [29 L.Ed.2d 692, 91 S.Ct. 2224].) "[T]he burden of demonstrating the invalidity of a classification under this standard rests squarely upon *the party who assails it.*" (*D'Amico v. Board of Medical Examiners, supra*, 11 Cal.3d at p. 17; see *Lindsley v. Natural Carbonic Gas Co.* (1911) 220 U.S. 61, 78–79 [55 L.Ed. 369, 31 S.Ct. 337].) The burden thus is on appellants to demonstrate that the classification of certain interpreters as SME's and their subsequent certification without examination bears no rational relationship to any conceivable legitimate state purpose.

Appellants argue that respondent "presented no evidence to justify denying [appellants] the opportunity to apply for the SME position" and "excluded an entire class of seasoned interpreters." However, appellants do not proffer any legal authority to indicate that the CPS testing service was required to allow them to apply to be SME's. Respondent had discretion to contract with CPS to develop and implement certification examinations.[8] (§ 68562, subd. (b).) CPS was an appropriate certification entity. (§ 68562, subd. (b).) Out of necessity, CPS selected certain individuals who were experienced in the field to develop these tests. Following industry guidelines, CPS recommended that the SME's be exempted from certification requirements. It is irrelevant that CPS selected some interpreters to serve as SME's and not others. Section 68560 et seq. do not detail specific processes by which new examinations must be developed.

---

[8] Section 68562, subdivision (b) provides, inter alia: "The Judicial Council shall adopt and publish guidelines, standards, and procedures to determine which certification entities will be approved to test and certify interpreters."

■ Respondent's actions had a legitimate purpose pursuant to its legislative mandate: to develop certification examinations for the affected languages, and to choose a group of interpreters to help develop these examinations. Section 68560 et seq. give respondent wide latitude in developing certification procedures for languages newly subject to certification. Respondent's actions pass the rational basis review.

### 3. *Declaratory Judgment*

Appellants sought a declaratory judgment as to whether the certification requirement applies to them and whether they are eligible for certification without reexamination. They also asked for a permanent injunction preventing respondent from enforcing the current certification deadline against appellants and other interpreters. In light of our foregoing analysis of appellants' due process and equal protection claims, we also affirm the trial court's judgment insofar as it denies appellants' claim for declaratory relief.

### DISPOSITION

The judgment is affirmed. Respondent is to recover costs on appeal.

Rubin, Acting P. J., and Grimes, J., concurred.

Appellants' petition for review by the Supreme Court was denied November 22, 2011, S197190. Cantil-Sakauye, C. J., and Baxter, J., did not participate therein.