Filed 12/8/23  Burlesque Enterprise v. City of Los Angeles CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| BURLESQUE ENTERPRISE, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> THE CITY OF LOS ANGELES, <br><br> Defendant and Respondent. | B324315 <br><br> (Los Angeles County Super. Ct. No. 21STCV40709) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Curtis A. Kin, Judge.  Reversed with directions.

Law Offices of Joshua Kaplan and Joshua Kaplan for Plaintiff and Appellant.

Hydee Feldstein Soto, City Attorney, Denise C. Mills, Chief Deputy City Attorney, John W. Heath, Senior Assistant City Attorney, Adrienne S. Khorasanee, Assistant City Attorney, and

Steven N. Blau, Deputy City Attorney, for Defendant and
Respondent.

_____

## INTRODUCTION

Burlesque Enterprise, Inc., the owner and operator of an
adult entertainment club, filed a lawsuit against the City of
Los Angeles, alleging the City revoked its license to operate the
club without notice or a hearing.  After sustaining the City's
demurrer to Burlesque's complaint without leave to amend, the
trial court entered judgment in favor of the City.

Burlesque challenges the order sustaining the demurrer to
two of its causes of action—violation of equal protection and
violation of procedural due process.  On the former cause of
action, the trial court did not err; on the latter, it did.  Despite
Burlesque's allegation the City issued it a valid permit to operate
the club, the court ruled Burlesque did not have a property
interest to which procedural due process attached.  That was
incorrect.  And because the City does not argue any other ground
on which to affirm the order sustaining the demurrer to the cause
of action for violation of due process, we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

A.      *The City Enacts a Zoning Ordinance for Adult
        Entertainment Businesses*

In 1978 the City enacted section 12.70 of the Los Angeles
Municipal Code (section 12.70), which sets zoning requirements
for adult entertainment businesses.  (See *Topanga Press, Inc. v.*

2

*City of Los Angeles* (9th Cir. 1993) 989 F.2d 1524, 1526-1527 (*Topanga Press*).) Subdivision (C) of section 12.70, as amended in 1986, prohibits "the continued operation" after March 1988 of any adult entertainment business within 500 feet of a residential zone, subject to certain exceptions. (Section 12.70, subd. (C); see L.A. Mun. Code*, § 12.22, subd. (20)(a); *Topanga Press*, at p. 1527.) Subdivision (C) of section 12.70 also prohibits any person from maintaining more than one adult entertainment business in the same building. (See *Topanga Press*, at p. 1527.)

B.    *The Federal District Court Issues an Injunction in the* Topanga Press *Litigation*

After the City enacted section 12.70, several existing adult entertainment businesses filed a lawsuit against the City in federal district court. (See *Topanga Press*, *supra*, 989 F.2d at p. 1527.) The businesses claimed the various zoning requirements were unconstitutional because the City did not provide the businesses "reasonable alternative avenues of expression" or sufficient possible relocation sites. (See *id.* at pp. 1528, 1534.) In 1995, after the United States Court of Appeals for the Ninth Circuit affirmed the district court's order granting a preliminary injunction enjoining the City from enforcing section 12.70 (*Topanga Press,* at pp. 1527, 1534), the City and the businesses reached a settlement. Pursuant to the parties' stipulation, the district court entered a permanent injunction enjoining the City from initiating any proceedings against the adult entertainment businesses named in the injunction for operating within 500 feet of a residential zone or for maintaining multiple adult entertainment businesses in the same building (the *Topanga Press* injunction).

3

C.    *Burlesque Tries To Sell Its Adult Entertainment Club; the City Holds a Hearing*

Since 2008 Burlesque has owned and operated a club that qualifies as an "Adult Entertainment Business" and "Adult Cabaret" under section 12.70.[1]  Sometime prior to 2020 Burlesque agreed to sell the club to a company called 603 Investments, LLC. Because Municipal Code section 103.08 requires a business to obtain a new permit when there is a change in ownership, 603 Investments applied to the Board of Police Commissioners for a new "Cafe Entertainment/Show—Adult" permit for the club.[2]  In January 2020 the Board held a hearing and denied 603 Investments' application because the club was within 500

---

[1]    An "Adult Cabaret" includes a "nightclub, bar, restaurant or similar establishment which regularly features live performances which are characterized by the exposure of 'specified anatomical areas,'" including "[l]ess than completely and opaquely covered . . . buttocks . . . or female breasts below a point immediately above the top of the areolas . . . ." (Section 12.70, subd. (B)(3), (13).)   According to Burlesque, the club "offers staged female theatrical dance performances during which the theatrical performer does expose her breasts or buttocks . . . within a defined area of the stage . . . ."  An Adult Cabaret qualifies as a type of "Adult Entertainment Business" under section 12.70.  (Section 12.70, subd. (B)(17).)

[2]    "Cafe entertainment and shows" includes "every form of live entertainment, . . . participated in by one or more persons." (L.A. Mun. Code, § 103.102, subd. (a).)

4

feet of a residential zone and therefore section 12.70 prohibited using the location as an adult entertainment business.

C.     *Burlesque and 603 Investments File a Petition for Writ of Mandate, Which the Trial Court Denies*

After the City denied 603 Investments' permit application, Burlesque and 603 Investments filed a petition for writ of administrative mandamus against the City.  In addition to alleging the City denied 603 Investments' permit application, Burlesque and 603 Investments alleged that Burlesque had a permit authorizing it to provide adult entertainment shows at the club and that the City "denied [Burlesque] its right to Due Process of Law" by "confiscat[ing] and revok[ing]" Burlesque's permit "without affording [Burlesque] any prior notice or opportunity to be heard . . . ."  In particular, Burlesque and 603 Investments alleged that in February 2020 a detective from the Los Angeles Police Department threatened Burlesque's owner that, if he did not surrender Burlesque's permit, officers would issue citations and publicly confiscate the permit. Burlesque and 603 Investments further alleged the City was estopped from revoking Burlesque's permit or denying 603 Investments' application for a new permit to provide adult entertainment at the club because the City knew Burlesque "was presenting staged topless dance performances" and had approved its permit every year since 2008.

The trial court denied the petition.  On 603 Investments' claim, the court ruled that substantial evidence supported the Board's determination the strip club was within 500 feet of a residential zone and that 603 Investments failed to show equitable estoppel precluded the City from enforcing

5

section 12.70. For Burlesque's claim, the trial court ruled Burlesque failed to present evidence the City made an adverse decision regarding Burlesque's permit. Burlesque (but not 603 Investments) appealed from the final judgment denying the writ petition.

### D. *Burlesque Files This Action Against the City*

While the appeal from the judgment denying the petition for writ of mandate was pending, Burlesque filed this action against the City.[3] In its first amended complaint, Burlesque made essentially the same allegations it made in its writ petition: Burlesque had a permit authorizing it to provide adult entertainment at the club; the City confiscated and revoked the permit without providing Burlesque notice or an opportunity to be heard; a detective from the Los Angeles Police Department threatened to issue citations and publicly confiscate the permit if Burlesque did not surrender it; and the City was estopped from revoking the permit.

Burlesque asserted some traditional, as well as some uniquely titled, causes of action: violation of its procedural due process rights; cruel and unusual punishment; "chilling effect on freedom of expression"; and "statutory infirmities— inapplicability of code to [Burlesque] . . . ." Burlesque also asserted a cause of action for violation of its right to equal protection. Burlesque alleged the *Topanga Press* injunction precluded the City from enforcing section 12.70 against

---

[3] Another division of this court has since affirmed the judgment denying the petition for writ of mandate. (See *Burlesque Enterprises, Inc. v. City of Los Angeles* (June 28, 2022, B313486) [nonpub. opn.].)

6

Burlesque because Burlesque was "similarly situated" to the "adult entertainment venues named as Plaintiffs in *Topanga Press*" and was a third party beneficiary of the *Topanga Press* injunction.

E. *The City Files a Demurrer to the First Amended Complaint, Which the Trial Court Sustains*

The City demurred to the first amended complaint. As relevant here, the City argued Burlesque failed to allege sufficient facts to constitute a cause of action for violation of its equal protection rights because Burlesque was not similarly situated to the businesses named in the *Topanga Press* injunction in that Burlesque was not a party to the *Topanga Press* litigation or named in the injunction. The City asked the court to take judicial notice of the district court's injunction in that case, which showed neither Burlesque nor any business operating at the location of Burlesque's club was named in the injunction.

The City argued Burlesque's cause of action for violation of procedural due process failed for two reasons. First, the City contended "[d]ue process was provided" at the Board's January 2020 hearing on 603 Investments' application for a permit. The City supported its argument with a request for judicial notice of the transcript of the hearing. Second, the City contended Burlesque failed to allege a "deprivation of a land use to which it was entitled." Citing section 103.30 of the Municipal Code, the City argued Burlesque's permit "did not authorize [Burlesque] to operate in violation of any laws." (See L.A. Mun. Code, § 103.30 ["[t]he granting of a permit by the Board does not [¶] . . . [¶] (b) [r]elieve an applicant/permittee from compliance with all applicable local, state, and federal laws, including those

7

related to . . . zoning"].)  Therefore, according to the City, Burlesque never had a right to operate an adult cabaret at the club.  The City made similar arguments on each of Burlesque's remaining causes of action.

The trial court granted the City's requests for judicial notice and sustained the demurrer to each cause of action.  On the cause of action for violation of equal protection, the court ruled Burlesque failed to allege how the City applied section 12.70 in an unequal manner.  The court ruled Burlesque could not enforce the *Topanga Press* injunction because Burlesque was neither a party to the litigation nor referred to in the injunction and Burlesque did not sufficiently allege it was a third party beneficiary of the injunction.

On the cause of action for violation of procedural due process, the court ruled Burlesque "fail[ed] to sufficiently allege that it had a legitimate interest in the permit to operate" the strip club.  The court stated that, "even if [Burlesque] had been granted" a permit, Burlesque was "still required to comply with zoning regulations," and it was "undisputed that [Burlesque] violated" section 12.70 "by operating within 500 feet" of a residential zone.  After ruling the remaining causes of action also failed, the court gave Burlesque leave to amend its cause of action for violation of equal protection, but sustained the demurrer to the remaining causes of action (including violation of procedural due process) without leave to amend.[4]

---

[4]     The City also contended that, if Burlesque stated any cause of action, the trial court should stay the action pending the appeal from the judgment denying the petition for writ of mandate because the two actions involved the same parties and

F.    *Burlesque Files a Second Amended Complaint;*
      *the City Files a Demurrer, Which the Trial Court*
      *Sustains Without Leave To Amend*

Burlesque filed a second amended complaint, alleging a single cause of action for violation of equal protection.  Burlesque added an allegation that in 2004 the City sent Burlesque a letter notifying Burlesque of certain revisions to the Municipal Code applicable to establishments that provide adult entertainment.  Burlesque attached a copy of the letter, which stated:  "Our records indicate your business meets the criteria for adult entertainment."  According to Burlesque, the letter showed that the City "agreed that [Burlesque] was in effect a third party beneficiary" of the *Topanga Press* injunction and that the City "would continue to refrain from enforcing Los Angeles Municipal Code § 12.70" against Burlesque.

The City demurred again, arguing the letter did not show Burlesque had a right to enforce the *Topanga Press* injunction because the letter did not mention the injunction or section 12.70.  The trial court agreed and sustained the demurrer to the second amended complaint, this time without leave to amend, and entered judgment in favor of the City.  Burlesque timely appealed from the judgment.

---

same causes of action.  Because the trial court sustained the demurrer on other grounds, the court did not reach this issue.  The City does not argue on appeal that, now that the judgment denying the petition for writ of mandate has been affirmed, claim or issue preclusion bars Burlesque's causes of action in this action.

9

## DISCUSSION

A. *Standard of Review*

"'In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory.'" (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768; accord, *Martin v. Gladstone* (2023) 96 Cal.App.5th 681, 688-689; *Thompson v. Spitzer* (2023) 90 Cal.App.5th 436, 451.) "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law." (*Mathews*, at p. 768, internal quotation marks omitted; accord, *Martin*, at p. 689; *Lauckhart v. El Macero Homeowners Assn.* (2023) 92 Cal.App.5th 889, 899.) "'[W]e accept as true even improbable alleged facts, and we do not concern ourselves with the plaintiff's ability to prove [the] factual allegations.'" (*Marina Pacific Hotel & Suites, LLC v. Fireman's Fund Insurance Company* (2022) 81 Cal.App.5th 96, 104-105; accord, *Nolte v. Cedars–Sinai Medical Center* (2015) 236 Cal.App.4th 1401; see *Alcorn v. Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 ["the question of plaintiff's ability to prove these allegations, or the possible difficulty in making such proof does not concern the reviewing court"].) "[W]e give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." (*Mathews*, at p. 768, internal quotation marks omitted; accord, *Lauckhart*, at p. 899; *Marina Pacific*, at p. 105.)

B.    *The Trial Court Did Not Err in Granting the City's Requests for Judicial Notice*

In sustaining the City's demurrers to the first and second amended complaints, the trial court granted the City's request for judicial notice of 18 exhibits submitted in support of the demurrer.  Burlesque spends a significant portion of its opening brief arguing that, by filing a request for judicial notice, the City "filed an improper speaking motion rather than the required Motion for Summary Judgment under California Code of Civil Procedure [section 437c] or a properly pled Demurrer."[5]

When ruling on a demurrer, courts "consider matters which may be judicially noticed." (*Mathews v. Becerra*, *supra*, 8 Cal.5th at p. 768, internal quotation marks omitted; see *Centinela Freeman Emergency Medical Associates v. Health Net of California, Inc.* (2016) 1 Cal.5th 994, 1010; *Martin v. Gladstone*, *supra*, 96 Cal.App.5th at p. 698; *Lauckhart v. El Macero Homeowners Assn.*, *supra*, 92 Cal.App.5th at p. 899.) "'The courts

___

[5]    "A speaking motion to dismiss or strike is one which is supported by facts outside the pleadings," which "ordinarily are set forth in an affidavit or declaration . . . ." (*Vesely v. Sager* (1971) 5 Cal.3d 153, 167, fn. 4.)  Prior to 1956 a defendant could file a nonstatutory speaking motion to dismiss an action. (See, e.g., *Cunha v. Anglo California Nat. Bank of San Francisco* (1939) 34 Cal.App.2d 383, 389.)  Such motions were "addressed to the 'inherent right of a court to strike or dismiss a complaint when it is made to appear by extraneous evidence that it is sham and based upon false allegations.'" (*Vesely*, at p. 167.)  In 1956 the Supreme Court abolished the non-statutory speaking motion. (*Pianka v. State* (1956) 46 Cal.2d 208, 211-212; see *Vesely*, at p. 167 ["'nonstatutory speaking motions have . . . been superseded by the procedure governing motions for summary judgment contained in section 437c of the Code of Civil Procedure'"].)

. . . will not close their eyes to situations where a complaint contains . . . allegations contrary to facts which are judicially noticed.' [Citation.] 'Thus, a pleading valid on its face may nevertheless be subject to demurrer when matters judicially noticed by the court render the complaint meritless.'" (*McAllister v. County of Monterey* (2007) 147 Cal.App.4th 253, 290; see *Pich v. Lightbourne* (2013) 221 Cal.App.4th 480, 490 ["in testing a complaint against a demurrer, we may disregard allegations that are inconsistent with . . . matters judicially noticed"].)

Burlesque does not discuss any of the exhibits the trial court took judicial notice of, much less explain through reasoned argument and citations to authority why the trial court erred in taking judicial notice of any particular exhibit. Therefore, Burlesque has forfeited any contention the trial court erred in taking judicial notice of any of the documents. (See *L.O. v. Kilrain* (2023) 96 Cal.App.5th 616, 620["'[w]hen an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority,'" the point is forfeited]; *Estrada v. Public Employees' Retirement System* (2023) 95 Cal.App.5th 870, 889 [same]; see also *L.O.*, at p. 620 [same for failing "'"to support an argument with the necessary citations to the record"'"].)

Moreover, we need only consider three documents of which the trial court took judicial notice to dispose of Burlesque's arguments on appeal: (1) various provisions of the Municipal Code; (2) the *Topanga Press* injunction; and (3) a City "Zone Information and Map Access System (ZIMAS) Zoning Map" that showed the City's zoning designations for all lots within 500 feet of the club. The first is subject to judicial notice under Evidence Code section 452, subdivision (b), as a "[r]egulation [or]

12

legislative enactment[ ] issued by or under the authority of . . . any public entity in the United States." (See *Urgent Care Medical Services v. City of Pasadena* (2018) 21 Cal.App.5th 1086, 1094 [taking judicial notice of a city's municipal code]; *Union of Medical Marijuana Patients, Inc. v. City of Upland* (2016) 245 Cal.App.4th 1265, 1269, fn. 2 [same]; see also Evid. Code § 459 ["[t]he reviewing court shall take judicial notice of (1) each matter properly noticed by the trial court"].) The second is the proper subject of judicial notice under Evidence Code section 452, subdivision (d), as a "[r]ecord[ ] of . . . any court of record of the United States," and Burlesque attached a copy of the *Topanga Press* injunction as an exhibit to its first and second amended complaints. (See *Panterra GP, Inc. v. Superior Court of Kern County* (2022) 74 Cal.App.5th 697, 708 [in reviewing an order sustaining a demurrer, "[w]e also consider any exhibits to the complaint"]; *Hoffman v. Smithwoods RV Park, LLC* (2009) 179 Cal.App.4th 390, 400 [same].) The third is relevant, for purposes of this appeal, only to the order sustaining the demurrer to the cause of action for violation of procedural due process. Because we are reversing the order sustaining the demurrer to that cause of action, we assume, without deciding, the zoning map is subject to judicial notice. (See *Venuto v. Owens-Corning Fiberglas Corp.* (1971) 22 Cal.App.3d 116 [taking judicial notice of a city's zoning ordinance and zoning map].)

13

C.    *The Trial Court Did Not Err in Sustaining the Demurrer to the Cause of Action for Violation of Equal Protection*

1.    *Applicable Law*

"""The concept of equal protection"""" under both the United States Constitution and California Constitution """"recognizes that persons who are similarly situated with respect to a law's legitimate purposes must be treated equally."""" (*In re C.B.* (2018) 6 Cal.5th 118, 134; accord, *Perry v. City of San Diego* (2021) 65 Cal.App.5th 172, 187; *A.S. v. Miller* (2019) 34 Cal.App.5th 284.) "Although '[e]qual protection challenges typically involve claims of discrimination against an identifiable class or group of persons[,] . . . a plaintiff who does not allege membership in a class or group may state a claim as a '"class of one."""" (*Lafayette Bollinger Development LLC v. Town of Moraga* (2023) 93 Cal.App.5th 752, 782; accord, *Las Lomas Land Co., LLC v. City of Los Angeles* (2009) 177 Cal.App.4th 837, 857; see *Village of Willowbrook v. Olech* (2000) 528 U.S. 562, 564 [120 S.Ct. 1073] ["[o]ur cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated"].) "To succeed on a class of one claim, a plaintiff must establish that '(1) the plaintiff was treated differently from other similarly situated persons, (2) the difference in treatment was intentional, and (3) there was no rational basis for the difference in treatment.'" (*Gerawan Farming, Inc. v. Agricultural Labor Relations Bd.* (2017) 3 Cal.5th 1118, 1144; see *Lafayette*, at

p. 783; *Bottini v. City of San Diego* (2018) 27 Cal.App.5th 281, 318.)[6]

>    2.    *Burlesque Did Not Allege It Was Treated Differently from Similarly Situated Persons or Entities*

In its first and second amended complaints, Burlesque alleged that, "since the [*Topanga Press*] injunction was entered in the U.S. District Court," the City has "not enforced the enjoined

---

[6]    In cases concerning discrimination against an identifiable class or group, "[a]n equal protection analysis has two steps. ""The first prerequisite . . . is a showing that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner.""" (*Conservatorship of Eric B.* (2022) 12 Cal.5th 1085, 1102, italics omitted.)  In a case pending in the Supreme Court, the Court has requested supplemental briefing on the following issue: "Whether the first step of the two-part inquiry used to evaluate equal protection claims, which asks whether two or more groups are similarly situated for the purposes of the law challenged, should be eliminated in cases concerning disparate treatment of classes or groups of persons, such that the only inquiry is whether the challenged classification is adequately justified under the applicable standard of scrutiny?" (*People v. Hardin*, review granted Jan. 11, 2023, S277487.)  Even if the Supreme Court eliminates the first step in cases concerning disparate treatment of classes or groups, however, it is not clear whether or how such a holding would affect class-of-one claims.  (See *Conservatorship of Eric B.*, at pp. 1108, 1113 (conc. opn. of Kruger, J.) [observing that the United States Supreme Court has recognized the first step "has a useful role to play in . . . cases involving so-called '"class of one"' equal protection claims"].)  Until the Supreme Court articulates a different standard, we follow the standard for class-of-one claims in *Gerawan Farming, Inc. v. Agricultural Labor Relations Bd., supra*, 3 Cal.5th 1118.

15

provisions" of section 12.70 "against [the] Plaintiffs in <u>Topanga Press</u> . . . ." Burlesque alleged that, like the plaintiffs in the *Topanga Press* lawsuit, it was a "similarly situated adult entertainment venue in the City of Los Angeles."

But it wasn't. "To satisfy the first element"—that the plaintiff was treated differently from other similarly situated persons—"the plaintiff[ ] must not only demonstrate a disparity in treatment but also that 'the level of similarity between [it] and the persons with whom [it] compare[s]'" itself is "'extremely high.'" (*Squires v. City of Eureka* (2014) 231Cal.App.4th 577, 594; accord, *Cordi-Allen v. Conlon* (2007) 494 F.3d 245, 251; see *Hu v. City of New York* (2d Cir. 2019) 927 F.3d 81, 93 [where the plaintiff does not show the defendant's "subjective ill will" toward the plaintiff, the plaintiff must show an "'extremely high' degree of similarity between a plaintiff and comparator"].) A "class-of-one plaintiff must be similarly situated to the proposed comparator in all material respects." (*SmileDirectClub, LLC v. Tippins* (9th Cir. 2022) 31 F.4th 1110, 1123; see *PBT Real Estate, LLC v. Town of Palm Beach* (11th Cir. 2021) 988 F.3d 1274, 1285; *Gianfrancesco v. Town of Wrentham* (1st Cir. 2013) 712 F.3d 634, 640; *Reget v. City of La Crosse* (7th Cir. 2010) 595 F.3d 691, 695.) As one court has stated, "the 'similarly situated' requirement must be enforced with particular rigor in the land-use context because zoning decisions 'will often, perhaps almost always, treat one landowner differently from another.'" (*Cordi-Allen*, at p. 251.)

True, Burlesque may have been an adult entertainment business like the plaintiffs in the *Topanga Press* litigation, but there was a material difference, evident from Burlesque's pleadings—Burlesque was not a party to the *Topanga Press*

16

litigation or the stipulated injunction.  This difference is an obvious reason the City would enforce section 12.70 against Burlesque but not against the other adult entertainment businesses Burlesque tried to compare itself to.  Had the City attempted to enforce section 12.70 against the parties in the *Topanga Press* litigation, it might have violated a federal court order.  No such limitation precluded it from enforcing section 12.70 against Burlesque.  (See *Conservatorship of Eric B.*, *supra*, 12 Cal.5th 1085, 1101 [the initial inquiry is not whether persons are similarly situated in any respect, but "'"whether they are similarly situated *for purposes of the [conduct] challenged*"'"]; *Cordi-Allen v. Conlon*, *supra*, 494 F.3d at p. 251 ["the proponent of the equal protection violation must show that the parties with whom he seeks to be compared have engaged in the same activity . . . without such distinguishing or mitigating circumstances as would render the comparison inutile"].)

Similarly, the City had good reason for stipulating to the injunction in the *Topanga Press* litigation.  The plaintiffs in that case sued the City and obtained a preliminary injunction enjoining the City from enforcing section 12.70 against them.  (See *Topanga Press*, *supra*, 989 F.2d 1524.)  Burlesque does not cite any authority to support the proposition that, when challenging a government entity's enforcement of a statute or ordinance, a party that has sued a government entity and reached a settlement to resolve the proceedings is similarly situated to a party that has not.  (See *Viske v. Basin Elec. Power Co-op.* (8th Cir. 1983) 712 F.2d 374, 375-377 [landowners who obtained jury awards against an electric power collective following condemnation proceedings were not similarly situated to landowners in a different state who received higher payments

17

from collective following test cases and a global settlement; a party may not "turn hard bargaining into an equal protection argument"]; see also *In re C.B.*, *supra*, 6 Cal.5th at p. 134 [equal protection "does not require . . . that different things must be treated as though they are the same"]; *Baluyut v. Superior Court* (1996) 12 Cal.4th 826, 832 ["[u]nequal treatment which results simply from . . . nonarbitrary selective enforcement of a statute does not deny equal protection"].)

Burlesque also contends it was a third party beneficiary of the *Topanga Press* injunction (and presumably therefore similarly situated to the parties named in the injunction). Even if a party could, under appropriate circumstances, enforce a consent decree as third party beneficiary of the decree,[7] Burlesque did not adequately allege it was a third party beneficiary.

To be a third party beneficiary of a contract, a party must show "not only (1) that it is likely to benefit from the contract, but also (2) that a motivating purpose of the contracting parties is to provide a benefit to the third party, and further (3) that permitting the third party to bring its own breach of contract action against a contracting party is consistent with the objectives of the contract and the reasonable expectations of the contracting parties." (*Goonewardene v. ADP, LLC* (2019)

_____

7       See *Blue Chip Stamps v. Manor Drug Stores* (1975) 421 U.S. 723, 750 ["a consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefited by it"]; *In re Tobacco Cases I* (2011) 193 Cal.App.4th 1591, 1600, fn. 2 ["courts have rejected the argument that consent decrees are contracts for purposes of . . . 'determining whether a third party beneficiary action could be maintained for breach of that contract'"].)

18

6 Cal.5th 817, 821; see *Hernandez v. Meridian Management Services, LLC* (2023) 87 Cal.App.5th 1214, 1222; *City of Oakland v. Oakland Raiders* (2022) 83 Cal.App.5th 458, 472.) Burlesque did not plead any facts suggesting that a motivating purpose of the *Topanga Press* injunction was to benefit Burlesque or any other business not named in the injunction. The injunction enjoins the City from instituting any proceedings for violations of certain provisions of section 12.70, subdivision (C), "against the persons named below" and "at the locations within the City of Los Angeles set forth below." The injunction lists 20 separate businesses and their addresses. The injunction does not list Burlesque or any other business with the same address as Burlesque's club. And the injunction does not include any language suggesting it was intended to benefit any person or entity other than the named businesses. (See *LaBarbera v. Security National Ins. Co.* (2022) 86 Cal.App.5th 1329, 1341 ["""It must appear to have been the intention of *the parties* to secure to [the third party] personally the benefit of its provisions."""])

Nor does the City's 2004 letter to Burlesque (or Burlesque's predecessor)[8] add anything. The letter simply notifies the addressee of certain revisions to the Municipal Code that "include additional regulations for those establishments that provide adult entertainment." The letter states: "Our records indicate your business meets the criteria for adult entertainment." The letter does not mention section 12.70, subdivision (C), or the *Topanga Press* injunction. Like the *Topanga Press* injunction,

---

8 The letter is addressed to "Select Café, Entertainment and Shows Business Operating in the City of Los Angeles." Burlesque alleged it has only been operating the club since 2008.

19

the letter contains no language suggesting a motivating purpose of the injunction was to provide a benefit to Burlesque or any other business not named in the injunction.  Burlesque's allegation it is a third party beneficiary is an unsupported legal conclusion, disregarded for purposes of reviewing the order sustaining the demurrer.  (See *Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1100 ["the reviewing court 'does not . . . assume the truth of contentions, deductions or conclusions of law'"]; *McBride v. Smith* (2018) 18 Cal.App.5th 1160, 1173 ["'Because only factual allegations are considered on demurrer, we must disregard any 'contentions, deductions or conclusions of fact or law alleged [in the complaint.]'"].)

D.    *The Court Erred in Sustaining the Demurrer to the Cause of Action for Violation of Procedural Due Process*

"Both the federal and state Constitutions compel the government to afford persons due process before depriving them of any property interest."  (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 212; *accord, California DUI Lawyers Assn. v. Department of Motor Vehicles* (2022) 77 Cal.App.5th 517, 529.)  "'The essence of due process is the requirement that "a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it.'" [Citations.]  The opportunity to be heard must be afforded 'at a meaningful time and in a meaningful manner.'" (*Today's Fresh Start*, at p. 212; accord, *California DUI Lawyers Assn.*, at pp. 529-530.)

Burlesque alleged that it held an "an annually renewed City of Los Angeles Police Commission Permit authorizing Cafe

20

Entertainment/Shows Adult to be presented" at the club; that the City last approved the permit in 2019 (although Burlesque did not specify the date); and that in February 2020, without any notice, a Los Angeles Police Department detective demanded that Burlesque's owner surrender the permit and threatened that, if he did not, officers would issue citations and confiscate the permit.  Drawing all reasonable inferences in favor of Burlesque's allegations, as we must in reviewing an order sustaining a demurrer (*Carroll v. City and County of San Francisco* (2019) 41 Cal.App.5th 805, 811), Burlesque alleged that the City issued it a permit to provide adult entertainment at the club (a property interest) and that, while the permit was still valid, the City's agents effectively revoked the permit (a deprivation) without providing Burlesque any notice or opportunity to be heard.  These allegations were sufficient to constitute a cause of action for violation of Burlesque's procedural due process rights. (See *Trans-Oceanic Oil Corp. v. City of Santa Barbara* (1948) 85 Cal.App.2d 776, 778, 795 ["[i]n revoking a permit lawfully granted" to a company to drill an oil well, "due process require[d]" the city "act only upon notice to the permittee, upon a hearing, and upon evidence substantially supporting a finding of revocation"]; see also *Kash Enterprises, Inc. v. City of Los Angeles* (1977) 19 Cal.3d 294, 306-307 [ordinance that permitted "summary seizure, retention and destruction" of noncompliant newsstands, without providing newsstand owner a hearing on the validity of the seizure, violated procedural due process]; cf. *Logan v. Zimmerman Brush Co.* (1982) 455 U.S. 422, 434 [102 S.Ct.

21

1148] ["'*some* form of hearing' is required before the owner is finally deprived of a protected property interest'"].)[9]

The trial court ruled Burlesque did not sufficiently allege it had a property interest in the permit. That ruling was incorrect. "'To have a property interest in a benefit'" to which due process rights attach, the plaintiff must "'have a legitimate claim of entitlement to it.'" (*Town of Castle Rock v. Gonzales* (2005) 545 U.S. 748, 756; see *Saleeby v. State Bar* (1985) 39 Cal.3d 547, 564; *Hobbs v. City of Pacific Grove* (2022) 85 Cal.App.5th 311, 320.) Such entitlements are ""'created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'"" (*Town of Castle Rock*, at p. 756; accord, *Hobbs*, at p. 320; see *Chan v. Judicial Council of California* (2011) 199 Cal.App.4th 194, 200 ["a party must demonstrate a promise or guarantee of a specific benefit or right in the entity's policies or state law"].)

A person or entity does not necessarily have a statutory entitlement to a permit. "The question of whether a statute creates an expectation of entitlement sufficient to create a

___

[9] There generally is no right to monetary damages for a violation of procedural due process under either the United States or the California Constitution. (*Katzberg v. Regents of University of California* (2002) 29 Cal.4th 300, 309, 329; see *Fairview Valley Fire, Inc. v. Department of Forestry & Fire Protection* (2015) 233 Cal.App.4th 1262, 1272 ["[i]n the absence of a statute otherwise providing for such damages, the denial, suspension or revocation of a permit, license, certificate, approval or authorization, will not give rise to a claim for damages"].) The plaintiff, however, may seek declaratory relief or an injunction. (*Katzberg,* at p. 307.) Burlesque sought, among other things, an injunction requiring the City to reinstate its permit.

property interest 'will depend largely upon the extent to which the statute contains mandatory language that restricts the discretion of the [permitting authority] to deny [permits] to applicants who claim to meet minimum eligibility requirements.'" (*Chan v. Judicial Council of California*, *supra*, 199 Cal.App.4th at p. 200.) "Once a permit has been issued," however, "its continued possession becomes a significant factor in the [holder's] legitimate pursuit of a livelihood. The revocation of a permit thus involves state action affecting important interests of its owner, and therefore cannot be accomplished without affording the procedural due process required by the Constitution." (*Traverso v. People ex rel. Dept. of Transportation* (1993) 6 Cal.4th 1152, 1162.)

Like other permits courts have held are statutory entitlements, the permit here enabled Burlesque to operate a business. (See *Traverso v. People ex rel. Dept. of Transportation*, *supra*, 6 Cal.4th at pp. 1158, 1164 [permit for placing a billboard was a property interest protected by due process]; *Trans-Oceanic Oil Corp. v. City of Santa Barbara*, *supra*, 85 Cal.App.2d at pp. 796-797 [permit for drilling an oil well was a property interest that "cannot be taken away except by due process of law"]; see also L.A. Mun. Code, § 103.02 ["No person may operate, engage in, conduct or carry on any business without first obtaining a permit issued by the Board of Police Commissioners."].) Moreover, the Municipal Code contains multiple provisions that limit the City's ability to revoke a permit, once issued, for "cafe entertainment and shows." (See *Brown v. City of Los Angeles* (2002) 102 Cal.App.4th 155, 170 ["A statute, rule or regulation may create an entitlement to a governmental benefit . . . if it sets out the only conditions under which the benefit may be denied."].)

The Municipal Code enumerates specific grounds on which the Board may initiate disciplinary actions against permittees or suspend or revoke permits; for example, where the "business has been operated in violation of any of the applicable [permitting] requirements" or where the permittee or its agent was convicted of certain offenses relating to the business. (L.A. Mun. Code, § 103.34.1; see *id.*, §§ 103.34, 103.35.) With certain exceptions, the permittee is entitled to a "hearing to determine whether a permit should be revoked, suspended, limited, or conditioned . . . ." (*Id.* § 102.03.) The hearing "shall be initiated by filing an accusation," which "shall be a written statement of charges . . . set[ting] forth in ordinary and concise language the acts or omissions with which the respondent is charged," and which "shall specify the statutes and rules which the respondent is alleged to have violated . . . ." (*Ibid.*) Because the City had limited discretion to revoke Burlesque's permit, Burlesque had a statutory entitlement to which due process rights attached. (See *Hobbs v. City of Pacific Grove, supra*, 85 Cal.App.5th at p. 325 ["once it issued a short-term rental license," the city "did not have authority to revoke that license prior to expiration of the contemplated one-year term absent notice to the licensee and an opportunity for the licensee to be heard"].)

In ruling Burlesque did not have a property interest in the permit, the trial court relied on section 103.30, subdivision (b), of the Municipal Code, which states granting a permit does not "[r]elieve an applicant/permittee from compliance with all applicable" zoning regulations. That may be, but the trial court conflated two issues: (1) whether Burlesque had a property interest entitling it to notice and an opportunity to be heard and (2) whether the City had grounds to revoke that property

24

interest. Burlesque alleged the City issued it a permit to operate an adult entertainment business at the club's address.[10] That the City's decision to revoke Burlesque's permit may have been justified (if, for example, the terms of the permit were inconsistent with section 12.70) does not change the fact that, once issued, the permit was a statutory entitlement the City did not have unfettered discretion to revoke. Indeed, one of the purposes of having a due process right is to make sure Burlesque knew why the City was revoking the permit and had an opportunity to contest the City's decision, even if Burlesque's defense ultimately proves unsuccessful. (See *Hughes v. Rowe* (1980) 449 U.S. 5, 13, fn. 12 ["'the right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimant's substantive assertions'"]; *Kreutzer v. County of San Diego* (1984) 153 Cal.App.3d 62, 72 [same]; see also *Kreutzer*, at p. 72 ["when the agency must make an independent determination of the facts before it may suspend or revoke" a license, the "license may not be suspended or revoked without granting a hearing to the licensee"].)

The City makes a number of arguments why Burlesque cannot "continue operating an Adult Cabaret at the [club] in violation of Section 12.70.C," including that "the constitutional validity of provisions like Section 12.70.C requiring closure of pre-existing uses is well recognized"; that Burlesque "lacks standing" to challenge the amortization period of section 12.70, which required all adult entertainment businesses within 500 feet of a residential zone to discontinue operations by

---

[10] An allegation the City did not contest through any judicially noticeable material.

25

March 1988; and that "the limitations period to challenge" section 12.70 "expired in 1986." The City commits the same mistake the trial court did, confusing whether the City had grounds to revoke the permit and whether Burlesque had a procedural due process right to notice and an opportunity to be heard before the City revoked the permit.[11]

[11] As discussed, the City argued in the trial court that Burlesque received notice and a hearing, and the City submitted a transcript of the hearing on the permit application submitted by 603 Investments. The City has abandoned that argument on appeal. Moreover, the hearing transcript does not indicate the City considered whether to revoke Burlesque's existing permit during the hearing. Similarly, the City does not argue its alleged failure to provide Burlesque notice and a separate hearing prior to revoking the permit was harmless in light of 603 Investments' hearing. (See *Hipsher v. Los Angeles County Employees Retirement Assn.* (2020) 58 Cal.App.5th 671, 702 ["Generally, a party is not deprived of due process in an administrative proceeding unless the deficiency in process resulted in prejudice."]; *Faton v. Ahmedo* (2015) 236 Cal.App.4th 1160, 1172 ["For due process purposes, the relevant inquiry is whether the respondent was afforded notice and an opportunity to defend (citation), and whether any procedural irregularities were prejudicial."].) And on an unrelated point, because Burlesque does not contend the trial court erred in sustaining the City's demurrer to Burlesque's other causes of action, we do not address them.

## DISPOSITION

The judgment is reversed. The trial court is directed to vacate its orders sustaining the demurrers to the first and second amended complaint. The court is directed to enter a new order (1) overruling the demurrer to the cause of action in the first amended complaint for violation of procedural due process and (2) sustaining without leave to amend the demurrers to the remaining causes of action in the first and second amended complaints. Burlesque is to recover its costs on appeal.

SEGAL, Acting P. J.

We concur:

FEUER, J.

MARTINEZ, J.

27